**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **Theresa Gabana, M.D.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Tufts Medicine, Inc., et al.,**<br><br>**Defendants.** | **Civil Action No.**<br>**24-12869-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

Theresa Gabana ("Plaintiff" or "Dr. Gabana") brings this action alleging religious discrimination against Tufts Medicine, Inc., Tufts Medical Center, Inc., and Tufts Medical Center Emergency Physicians, LLC (collectively "Defendants" or "Tufts Medical"). Plaintiff was terminated from her position as an emergency physician with Tufts Medical Center Emergency Physicians, LLC ("TMCEP") in October, 2021, following her refusal to receive the COVID-19 vaccine, as mandated by Tufts Medical in August of the same year. Plaintiff had requested an accommodation to the vaccine mandate based on her religious beliefs, which Tufts Medical denied.

Plaintiff contends that Defendants terminated her on the basis of her religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and M.G.L. c. 151B, §4(1),

respectively. Defendants moved for summary judgment and have also moved to strike portions of Plaintiff's affidavit filed in conjunction with her opposition to summary judgment. For the reasons that follow, Defendants' motion to strike and motion for summary judgment will be **ALLOWED**.

## I. Motion to Strike

Before summarizing the facts of the case, it is necessary to address the Defendants' motion to strike because that will determine the record available for resolving the motion for summary judgment.

Defendants move to strike certain statements contained in Plaintiff's affidavit filed in opposition to the Defendants' motion for summary judgment as well as the corresponding paragraphs contained in Plaintiff's "Additional Statement of Material Facts" that are based on the challenged portions of the affidavit. See Perez v. Volvo Car Corp., 247 F.3d 303, 314-15 (1st Cir. 2001) (affidavit, allegedly deficient under Fed. R. Civ. P. 56 (e) (1), may be addressed by a motion to strike).

First, Tufts Medical argues that Dr. Gabana's statement that she was "not given a specific dedicated email address" to contact the committee created by Tufts Medical to rule on accommodation requests ("Exemption Committee") is inadmissible because it is inconsistent with her prior deposition testimony. Furthermore, it is purportedly immaterial.

The Court agrees with the second contention. Whether Plaintiff had knowledge of, or access to, the Exemption Committee's email is immaterial to the operative and undisputed fact that the Exemption Committee reviewed Plaintiff's accommodation request. The statement is therefore irrelevant to whether Defendants are entitled to summary judgment. See Curtin v. Cambridge Health All., No. CV 24-10840-LTS, 2026 WL 1459788 , at *4 (D. Mass. Apr. 10, 2026), reconsideration denied, No. CV 24-10840-LTS, 2026 WL 1459789 (D. Mass. May 6, 2026) ("A statement of additional undisputed facts is not a vehicle to inflate the record with immaterial and inadmissible statements").

The second challenged portion of Plaintiff's affidavit relates to her assertion that in August, 2021, before she was terminated,

> the Centers for Disease Control and Prevention [("CDC")] publicly acknowledged that COVID-19 vaccines did not prevent transmission of the virus and that vaccinated individuals could still spread COVID-19.

That statement constitutes hearsay because it was made by an out of court declarant, the CDC, and is now offered for the truth of the matter asserted, i.e., that vaccinated persons could still contract and spread COVID-19 at the time Tufts Medical initiated its vaccine mandate.

That Plaintiff offered the statement for the truth of the matter asserted is confirmed in her memorandum in opposition to Defendants' motion to strike. In that memorandum, Plaintiff asserts that the essential proposition of the CDC's alleged statement was that "vaccinated individuals could still contract and spread COVID-19." As hearsay, the statement cannot properly be considered by the Court in ruling on Defendants' motion for summary judgment. See Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment").

In any event, Plaintiff's statement does not create a genuine dispute of material fact as to whether Defendants relied on objective, scientific evidence in initiating the vaccine mandate. Even if that statement could be considered as evidence that vaccinated persons may transmit COVID-19, it would not foreclose Tufts Medical from requiring workers to be vaccinated as the safest and most effective approach to protecting its patients and employees.

The Court also declines to take judicial notice of the purported public statements of the CDC, notwithstanding Plaintiff's reference to an August, 2021 news article containing quotations from then-CDC director Rochelle Walensky describing the efficacy of the vaccine against the transmission of COVID-19. It is self-evident that, for the purpose of judicial

notice, a news report describing a statement made by a member of an organization does not constitute a public statement of the organization itself. Thus, facts pertaining to the timing or substance of statements constituting policies of the CDC cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201 (b)(2).[1]

Accordingly, the Court will allow Defendants' motion to strike the contested portions of Plaintiff's affidavit and the corresponding paragraphs in Plaintiff's "Statement of Material Facts."[2]

## II. Facts

Plaintiff was hired by TMCEP as an emergency physician in 1992. Since 2007, she worked in the Hospital's emergency department performing procedures involving direct contact with patients, including suturing wounds, reducing fractures, draining abscesses, stapling scalp lacerations, and splinting fractures and sprains.

Beginning in January, 2020, the Hospital began dealing with a surge of COVID-19 cases. In the summer of 2021, Tufts Medical

[1] Furthermore, the news article referred to by Plaintiff does not constitute a "public record" of the alleged public statements of the CDC. See Fed. R. Evid. 803 (defining "public record" as a "record or statement of a public office" (emphasis added)).

[2] In any event, whether or not the statements at issue are part of the record, does not affect the Court's determination that Defendants are entitled to summary judgment.

determined, based upon guidance from the Centers for Disease Control and Prevention ("CDC"), that requiring all workers to receive the COVID-19 vaccine was vital to protecting the safety of its patients, visitors and staff. On August 10, 2021, Tufts Medical initiated a mandatory COVID-19 vaccination policy ("the policy") for all workers. The policy allowed personnel to seek medical or religious exemptions from the vaccination requirement but, in the absence of such exemption, workers were required to be immunized with the COVID-19 vaccine by no later than October 1, 2021. The policy prohibited the Hospital from scheduling workers not immunized by October 1, 2021 for regular shifts. In implementing the policy, Tufts Medical created the Exemption Committee to review accommodation requests.

On September 3, 2021, Plaintiff submitted a religious accommodation request form wherein she asserted that her Christian faith prevented her from receiving a COVID-19 vaccine because they were "developed with, or tested upon, aborted human fetal tissue cell lines." After reviewing Plaintiff's request, Tufts Medical notified her by email of the Exemption Committee's denial of her accommodation on the grounds that the accommodation would present an undue hardship to the Hospital. In the email, Tufts Medical offered Dr. Gabana the opportunity to apply for any open job for which she was qualified and could perform entirely remotely.

Dr. Gabana chose not to be vaccinated and she was terminated by TCMEP. On October 25, 2021, Plaintiff submitted a written appeal to the Exemption Committee. On November 16, 2021, the Exemption Committee notified Plaintiff that it was upholding the denial of her request. Thereafter, Plaintiff reached out to her supervisor, Dr. Brian Barenwolt ("Dr. Barenwolt"), to inquire about remotely performing non-patient-facing duties of an emergency physician, such as advising nurses on X-rays and following up with patients regarding laboratory results. In response, Dr. Barenwolt told Plaintiff that no remote positions were available for an emergency physician. Plaintiff also acknowledged that she had searched the Hospital's website for remote positions that matched her role and found none to be available.

Dr. Gabana commenced the present action against Tufts Medical in Massachusetts Superior Court in October, 2024, alleging that Defendants violated Title VII and M.G.L. c. 151B, §4(1) by denying her request for an exemption to its vaccine mandate. Following removal to federal court, Defendants moved for summary judgment, which Plaintiff timely opposed. Plaintiff also submitted an affidavit in support of her opposition to summary judgment. As noted above, Defendants moved to strike certain portions of that affidavit as inadmissible.

## III. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside, 895 F.2d at 50). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when the evidence, with respect to the material fact in dispute, "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines

that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23, 106 S. Ct. 2548. Where the non-movant bears the ultimate burden of proof at trial, he must present enough "definite, competent evidence to rebut the motion." Greene v. Cabral, 323 F. Supp. 3d 96, 104 (D. Mass. 2018) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

## IV. Discussion

### A. Religious Discrimination

Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect to the terms, conditions or privileges of employment on the basis of religion. 42 U.S.C. §2000e-2(a). Section 4 of M.G.L. c. 151B, contains a parallel prohibition and further requires employers to make reasonable accommodation to an employee's religious needs rather than imposing conditions of employment that would compel the employee to violate or abandon the practice of his or her religion. M.G.L. c. 151B, §4(1A). Because the Massachusetts Supreme Judicial Court looks to federal interpretation of Title VII in construing Chapter 151B, the First Circuit applies the two statutes interchangeably. See Noviello v. City of Boston, 398 F.3d 76, 91 (1st Cir. 2005).

The First Circuit applies a two-part framework in analyzing religious discrimination claims under Title VII. Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023). The plaintiff must first demonstrate that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action. Id. If the plaintiff meets that burden, the employer must then show that

> it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.

Id. (quoting Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004)).

**B. Undue Hardship**

For summary judgment purposes, Tufts Medical does not contest that Dr. Gabana has established a prima facie case that her asserted beliefs conflicted with the vaccination mandate or was the reason for her termination. Rather, Defendants contend that they did not discriminate against Plaintiff on the basis of her religious beliefs because any reasonable accommodation to those beliefs would have imposed an undue hardship on the operations of the Hospital.

Undue hardship is shown "when a burden is substantial in the overall context of an employer's business." Groff v. DeJoy, 600 U.S. 447, 468 (2023). The inquiry is fact-specific requiring courts to weigh all relevant factors, including the

particular accommodation at issue and its practical impact based on the nature, size and operating cost of the employer. Id. Relevant factors include not only direct economic costs but also indirect costs related to health and safety. Antredu v. Mass. Dep't of Youth Servs., 729 F. Supp. 3d 76, 84 (D. Mass. 2024).

Here, it is undisputed that Dr. Gabana's position as an emergency physician required her to provide direct care to patients and to interact with patients' families, other emergency physicians, nurses, physician assistants, residents and medical students during each shift. Under such circumstances, allowing an unvaccinated Plaintiff to perform her duties may have posed substantial safety concerns to all of those who she encountered; and moreover, carried the potential to exacerbate the staffing difficulties of the Hospital amid the stresses of the pandemic. See Antredu, 729 F. Supp. 3d at 84 ("An employer's legitimate safety concerns are relevant considerations in the undue hardship analysis"). Based on these factors, the Court concludes that allowing Plaintiff to continue performing her duties while unvaccinated posed a credible undue hardship during the pandemic.[3]

[3] In so concluding, the Court joins several other judges of this Court in finding undue hardship in similar circumstances. See, e.g., Munroe v. Bos. Med. Ctr., No. 1:22-cv-11935-FDS, 790 F. Supp. 3d 52, 60 (D. Mass. 2025); Cyr v. Bos. Med. Ctr., No. 1:22-cv-11930-JEK, 2025 WL 269239, at *6 (D. Mass. Jan. 22, 2025); Lavine v. Mass Gen. Brigham Inc., No. 23-cv-10987-BEM, 2025 WL 1372316, at *6 (D. Mass. May 12, 2025); Anastos v. Bos. Med. Ctr., No. 22-cv-11971-MJJ, 2025 WL 275597, at *5 (D. Mass. Jan. 7, 2025).

Nevertheless, Plaintiff contends that, because she was permitted to work while masked and using personal protective equipment ("PPE") during the period leading up to the vaccine mandate without any verified incident, Defendants are required to demonstrate that allowing her to continue working as such would have resulted in "substantial increased costs in relation to the conduct of [their] particular business." Groff, 600 U.S. at 470. That argument is unavailing as a matter of law. See Robinson v. Children's Hosp. Boston, 2016 U.S. Dist. LEXIS 46024, at *26 (D. Mass. Apr. 5, 2016) ("Title VII does not require employers to test their safety policies on employees to determine the minimum level of protection needed to avoid injury"). Cf. Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001) (noting that the "fact that [the employer] previously allowed [plaintiff a certain accommodation] does not obligate them to continue providing such an accommodation").

In any event, Dr. Gabana's argument rests on two erroneous premises: (1) that the Hospital did not already face significant safety risks before the vaccine mandate, and (2) that it was feasible for Tufts Medical to continue to permit workers to perform their duties while using masks and PPE alone. When Defendants instituted the vaccine mandate, at-home testing was unavailable, requiring testing to be performed at a hospital where results took four to five hours to verify. Thus, given

the Hospital's staffing shortages at that time, allowing unvaccinated employees to test at home, wait for results and report to work if and only if the results were negative posed undue hardship.

Finally, Dr. Gabana asserts that Tufts Medical did not undertake a "good-faith, fact-specific evaluation" of alternative accommodations as required under Title VII. See Groff, 600 U.S. at 473 ("Consideration of other options . . . would also be necessary"). As noted above, in response to Plaintiff's suggestion that she be permitted to perform tasks that would not require direct contact with patients or staff, Defendants concluded that relieving Plaintiff of her core responsibilities as an emergency physician while retaining her as an employee posed an undue hardship on the Hospital. Given the Hospital's need for workers who could provide in-person care for COVID-19 patients, as evidenced by the necessary conversion of existing care units to facilities focused solely on COVID-19 treatment, and that an essential function of Plaintiff's role was providing direct patient care, the Court concludes that Defendants indeed engaged in a good-faith evaluation of Plaintiff's alternative accommodation before concluding that it was untenable.

In reaching this conclusion, the Court acknowledges that the developing understanding of COVID-19, including what has

since been learned about possible adverse effects and limitations of the vaccine, may cast doubt on Tufts Medical's decision in retrospect. The Court is sympathetic to Plaintiff's position. She faced a difficult choice between her sincerely held beliefs and her livelihood. The undue hardship analysis is, however, dependent upon the circumstances that existed at the time rather than their appearance in hindsight.

The Hospital was operating under significant uncertainty, facing a surge in patient demand, acute staffing pressure and reliance on the then-best available public health guidance. That the science may have evolved does not render the contemporaneous judgment of Tufts Medical unreasonable. On the record before the Court, permitting an unvaccinated emergency physician to continue providing direct patient care may well have imposed a substantial burden on the operation of the Hospital as matters stood at the time.

**ORDER**

For the foregoing reasons, Defendants' motion to strike (Docket No. 40) and motion for summary judgment (Docket No. 37) are **ALLOWED**.

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: September 15, 2026